LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA; Laborers Vacation–Holiday Trust Fund for Northern California; Laborers Pension Trust Fund for Northern California; Laborers Training and Retraining Trust Fund for Northern California, Plaintiffs–Appellants,

v.

WESTLAKE DEVELOPMENT, a corporation; First Doe; Second Doe; Third Doe; Black Corporation; White Corporation; Blue Co.; and Grey Company, a corporation, Defendants–Appellees.

WESTLAKE DEVELOPMENT COMPANY, INC., Petitioner–Counter–respondent–Appellee,

v.

LOCAL 389 LABORERS UNION; Northern California District Council of Laborers, Respondents–Counter–petitioners–Appellants.

Nos. 93–16584, 93–16666.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 13, 1995.

Decided April 25, 1995.

Sandra Rae Benson, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, CA, for plaintiffs-appellants.

Nick A. Boodrookas, Adam P. Siegman, Leland, Parachini, Steinberg, Flinn, Matzger & Melnick, San Francisco, CA, Richard Alaniz, Terry Schraeder, Alaniz & Schraeder, Houston, TX, for defendants-appellees.

Before: GOODWIN, CANBY, and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

In case number 93–16584, Laborers Health and Welfare Trust Fund for Northern California and related trust funds (the Trust Funds) appeal the district court's summary judgment in favor of Westlake Development Company, Inc. (Westlake), in the Trust Funds' action under the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and the Employee Retirement and Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B), (e)(1), seeking pension contributions required by Westlake's 29 U.S.C. § 158(f) pre-hire collective bargaining agreement (CBA). In case number 93–16666, consolidated for appeal, Laborers Local Union 389 and related entities (the "Union") appeal the district court's grant of Westlake's petition to vacate an arbitration award issued by an arbitration panel pursuant to the provisions of the CBA. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

I.

FACTS AND PRIOR PROCEEDINGS

A. The Trust Funds Case

The Trust Funds brought an action in state court seeking money damages for allegedly delinquent fringe benefit contributions based upon a pre-hire CBA executed by employer Westlake.[1] Westlake removed the ac-

---

[1]. The Labor Management Relations Act (LMRA) generally requires that a union represent a majority of the employer's work force before the union and the employer may lawfully enter into a collective bargaining agreement. *See Orange Belt Dist. Council of Painters v. Kashak*, 774 F.2d 985, 987 (9th Cir. 1985) (citing *International Ladies' Garment Workers' Union v. NLRB*, 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961)). Section 8(f) of the LMRA, 29 U.S.C. § 158(f), provides a limited exception to the generally applicable rules by authorizing "pre-hire" agreements

tion to federal court. The parties entered into a stipulation of settlement which provided for an audit of Westlake's records. After the audit the parties were unable to reach a settlement, and the Trust Funds filed an amended complaint seeking to enforce the CBA by requiring Westlake to pay contributions in the amount of $22,325.46, plus interest, liquidated damages, attorneys' fees and costs.

It is undisputed that on October 12, 1977, Westlake and the Union entered into the CBA which bound it to the Laborers' Master Agreement. The master agreement establishes, *inter alia*, wages, hours and working conditions, and requires Westlake to make fringe benefit contributions to the Trust Funds on behalf of employees covered by the agreement, and further binds Westlake to the provisions of the Trust Agreements establishing the Trust Funds. Westlake paid contributions for fringe benefits to the Trust Funds from February 1967 until July 1990.

By letter dated September 24, 1990, Westlake notified the Union that it considered the CBA unenforceable and would no longer abide by the agreement because for the past three years it had "never employed more than one individual performing laborer's work," and had "no plans to hire employees in this classification in the future." Westlake's cancellation and repudiation of the CBA was thus based on the "one-employee unit rule," which provides that employers need not participate in collective bargaining if they have only a single employee who falls within the collective bargaining unit.[2]

The district court granted Westlake's motion for summary judgment and denied the Trust Funds' motion for summary judgment. The court determined that Westlake had lawfully repudiated the CBA and therefore was not obligated to pay the fringe benefit contributions claimed by the Trust Funds. The Trust Funds timely appeal.

in the construction industry regardless of the fact that the union does not yet represent a majority of the employer's work force. 29 U.S.C. § 158(f); *Orange Belt Dist. Council,* 774 F.2d at 988.

2. "As a matter of long-standing policy, the NLRB will not certify or find appropriate a single-per-

## B. The Union Case

This case arose subsequent to the filing of a grievance by the Union on August 24, 1992, alleging violation of the CBA by Westlake for its use of non-union employees for work covered by the CBA. Westlake appeared only for the purposes of contesting jurisdiction. An arbitrator entered an award in favor of the Union. Westlake then filed a petition in district court to vacate the arbitration award, alleging that the CBA was no longer enforceable because of the one-employee unit rule. The Union filed a cross-petition to confirm the award.

The district court determined that Westlake had lawfully repudiated the CBA and vacated the arbitration award because the repudiation eliminated the contractual basis for arbitration, and thus the arbitration panel was without jurisdiction. The Union timely appeals.

## II.

## STANDARD OF REVIEW

A grant of summary judgment is reviewed *de novo. Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). Our review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). *Id.* We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

Whether certain contract defenses are available in an action to recover delinquent trust fund contributions is a question of law reviewed *de novo. Southwest Adm'rs, Inc. v. Rozay's Transfer,* 791 F.2d 769, 773 (9th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 999 (1987).

son bargaining unit in a representation proceeding." *Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying Co.,* 746 F.2d 557, 565 (9th Cir.1984). The Board will therefore not direct an employer to bargain with respect to such a unit. *Foreign Car Center,* 129 NLRB 319, 320 (1960).

## III.

## DISCUSSION

### A. Repudiation in the One–Employee Unit Situation

The Trust Funds argue Westlake's repudiation was ineffective because unilateral repudiation of pre-hire agreements was rejected by this court in *Mesa Verde Constr. Co. v. Northern Cal. Dist. Council of Laborers*, 861 F.2d 1124 (9th Cir.1988) (en banc). The district court rejected this argument, as do we.

In *Mesa Verde* we held that the decision of the National Labor Relations Board in *Deklewa v. International Ass'n of Bridge, Structural and Ornamental Ironworkers, Local 3*, 282 NLRB 1375, 1987 WL 90249 (1987), *enforced*, 843 F.2d 770 (3d Cir.1988), *cert. denied*, 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988), "determining that pre-hire collective bargaining agreements may not be unilaterally repudiated prior to a Board-certified election or termination of the contracts, applies in this circuit." *Mesa Verde*, 861 F.2d at 1126. However, as the district court pointed out, and as Westlake reiterates on appeal, *Mesa Verde* did not address repudiation under the one-employee unit rule. Both *Mesa Verde* and *Deklewa* involved the typical bargaining unit involving more than one member, in which a decertification election is readily available to allow employees to reject the contract. *See Mesa Verde*, 861 F.2d at 1126; *Deklewa*, 1987 WL 90249 at *3; *compare Northern Cal. Dist. Council of Laborers v. Strauss Constr. Co.*, 672 F.Supp. 430, 435 (N.D.Cal.1987) (holding that a "single-employee employer" could repudiate a pre-hire agreement by giving actual notice that the agreement was terminated), *aff'd*, 897 F.2d 533 (9th Cir.1990).

We hold that *Mesa Verde*, which did not involve a one-employee unit, did not affect our prior holding in *Operating Eng'rs Pen-sion Trust v. Beck Eng'g & Surveying Co.*, 746 F.2d 557 (9th Cir.1984), which did involve a one-employee unit. There we held that "a construction industry employer who employs a single employee pursuant to a Section 8(f) pre-hire agreement is entitled to repudiate the agreement by conduct sufficient to put the union and the employee on notice that the agreement has been terminated." *Id.* at 566. Our decision in *Beck* was "specifically shaped to respond to the unique circumstances of a single-employee bargaining unit in the construction industry." *Id.* at 565. The district court was thus in line with both *Beck* and *Mesa Verde* when it observed that "[s]ince [the one-employee unit] rule essentially dissolves the bargaining unit ... it seems appropriate to treat repudiation under the single employee unit rule as equivalent to a repudiation resulting from decertification of the bargaining representative."

In this case, the evidence from the Trust Funds' own audit of Westlake's records demonstrates that Westlake was a "one-employee employer" during the relevant time period.[3] Westlake gave actual notice of repudiation in its letter of September 24, 1990, and the district court therefore properly concluded that Westlake lawfully repudiated the pre-hire agreement.

This conclusion is bolstered by the Board's post-*Deklewa* adherence to the rule allowing unilateral repudiation in single employee unit situations. In *Mesa Verde* we adopted the Board's "reasonable and tenable construction of section 8(f)" in *Deklewa*. *Mesa Verde*, 861 F.2d at 1131; *see also id.* at 1130–33. Thus, we will not here ignore the Board's post-*Deklewa* allowance of unilateral repudiation in single employee unit situations.

In *Haas Garage Door Co.*, 308 NLRB 1186 (1992), 1992 WL 277382, a construction industry employer who had signed an 8(f) agreement attempted to repudiate it at a time when it employed only one employee. The administrative law judge (ALJ) ruled

---

3. Appellants represented on appeal that they have recently discovered evidence of more than a single employee in the collective bargaining unit. However, their motion to remand based on this evidence was denied by this court subject to the district court considering a motion for relief from judgment under Fed.R.Civ.P. 60(b). On March 4, 1994, the district court found appellants failed to present evidence establishing good cause to revisit its previous order and denied the application. We take it as established, then, that Westlake employed only a single employee at all times relevant to the issues in the case.

that, under *Deklewa*, an employer can never repudiate such an agreement. The Board reversed the ALJ, stating that it found

> merit in the [employer's] defense that it is not bound to the contract because it has no employees doing unit work. Initially, we disagree with the judge's finding that even if an employer has no employees doing unit work it cannot repudiate an 8(f) contract. Rather, the Board has held that the one-man unit rule applies in an 8(f) context.... Accordingly, we find that the [employer] did not violate Section 8(a)(5) and (1) by repudiating the contract....

*Id.* at 1992 WL 277382 *2 (footnote omitted); *see also Kirkpatrick Elec. Co.*, 314 NLRB No. 169 (1994), 1994 WL 496682, 1994 NLRB LEXIS 710 (Board adopts ALJ's conclusion that the employer lawfully repudiated a CBA because at the relevant time the unit consisted of only one statutory employee).

In *Searls Refrigeration Co.*, 297 NLRB 133 (1989), 1989 WL 224413, the Board upheld and adopted the decision of the ALJ that the employer's mid-term repudiation of an 8(f) agreement did not violate the NLRA because the "appropriate unit consisted of no employees for approximately two years." *Id.* at *4. The Board agreed with the ALJ that "the application of the 'one man unit' rule is appropriate under the factual circumstances herein." *Id.* at *5. *See also Stack Elec., Inc.*, 290 NLRB 575, 577 (1988), 1988 WL 213985 *4 (expressly stating that an employer employing "one or fewer" permanent employees "may withdraw recognition from a union, repudiate its contract with the union, or unilaterally change employees' terms and conditions of employment" without violating section 8(a)(5) of the Act); *Adanac Fire Protection, Inc.*, 1991 NLRB LEXIS 1279 (1991) (ALJ decision concluding that employer lawfully repudiated 8(f) agreement by letter where there had never been more than one employee before the repudiation).

Clearly these post-*Deklewa* decisions by the Board speak not only in terms of the standard application of the one-employee unit rule (where there is no statutory obligation to bargain in a representation proceeding), but also directly in terms of lawful unilateral repudiation of section 8(f) agreements where

there is a single (or no) employee unit. We adopt the Board's reasoning in concluding that Westlake, a "one-employee employer," lawfully repudiated the CBA.

### B. Repudiation as a Defense to an ERISA Action

■ The trust agreement in this case required only those contributions required by the CBA. The district court held that because the bargaining unit in this case was dissolved because of the one-employee unit rule, there was no binding CBA and thus no further obligation on the part of Westlake to pay into the Trust Funds. *See Sheet Metal Workers' Int'l Ass'n v. West Coast Sheet Metal Co.*, 954 F.2d 1506, 1509 (9th Cir.1992) ("The provisions of the contract that concern Trust Fund contributions must be interpreted in the context of the contract as a whole. A contract to contribute to a trust fund of a Union with which [the employer] has no ongoing collective bargaining relationship makes no sense."); *Rozay's Transfer*, 791 F.2d at 773 ("For an employer to be obligated to make employee benefit contributions to a trust fund, there must exist a binding collective bargaining agreement.").

The Trust Funds argue that Westlake's repudiation is not a valid defense because contract defenses do not relieve an employer of its contribution obligations in an action by a trust fund for fringe benefit contributions. "For reasons of public policy, traditional contract law does not apply with full force in actions brought under [ERISA] to collect delinquent trust fund contributions." *Rozay's Transfer*, 791 F.2d at 773. In support of their argument, the Funds rely primarily on *Carpenters Health & Welfare Trust Fund v. Bla–Delco Constr., Inc.*, 8 F.3d 1365 (9th Cir.1993), a case decided after the district court ruled in this case.

In *Bla–Delco*, the employer notified the union that it was not going to renew the CBA and stopped making pension fund contributions. *Id.* at 1366–67. The employee trust funds sued the employer to recover delinquent contributions, alleging that the notice of termination was untimely. The district court did not decide whether the employer had effectively terminated the CBA, but in-

stead ruled that the issue of termination was arbitrable under the terms of the CBA. *Id.* at 1367. We reversed the district court, holding that the trust funds were not bound by the CBA and were not required to arbitrate, and that *Rozay's Transfer* barred the employer from raising the termination of the CBA as a defense to the trust fund's collection action. *Bla–Delco,* 8 F.3d at 1369. We observed that "[t]he dispute centers on whether Bla–Declo effectively terminated the CBA." *Id.* at 1369. "Consequently, the CBA was not 'void,' but merely 'voidable,' and therefore, Bla–Declo's purported termination of the CBA is not a legitimate defense to the Trust Fund's action." *Id.*

In this case, however, we hold (as did the district court) that Westlake's unilateral repudiation of the CBA in this one-employee unit situation was lawful. The CBA in this case is therefore void, not merely voidable. *See Alaska Trowel Trades Pension Fund v. Lopshire,* 855 F.Supp. 1077, 1082 (D.Alaska 1994). *Bla–Delco* did not involve a one-employee unit and we do not read that case as in any way preventing unilateral repudiation under the circumstances in this case.

The obligation to contribute to the Trust Funds depends upon the existence of employment covered by the CBA. Once the CBA was lawfully repudiated, there was no longer any covered employment and thus there was no duty on Westlake's part to contribute to the Trust Funds. *See Sheet Metal Workers,* 954 F.2d at 1509.

## C. The Arbitration Award

We agree that Westlake lawfully repudiated the CBA under the one-employee unit rule. Therefore, we affirm the district court's order in case number 93–16666 that "[a]s of that repudiation, the contractual basis for arbitration vanished and the arbitration panel was without jurisdiction to issue any award."

## IV.

### CONCLUSION

We will not consider the two arguments raised by the Trust Funds for the first time on appeal. *See United States v. Flores–*

*Payon,* 942 F.2d 556, 558 (9th Cir.1991). We deny Westlake's request for sanctions made on the ground that this appeal is frivolous. The summary judgment in favor of Westlake in case number 93–16584 is affirmed. The order vacating the arbitration award in case number 93–16666 is also affirmed.

AFFIRMED.